E-FILED
Monday, 28 February, 2011 12:02:01 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ADAM G. SPRINKLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-4070 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm. For the reasons set forth below, Plaintiff's Motion for Summary Reversal [#12] is DENIED, and the Commissioner's Motion to Affirm [#15] is GRANTED.

### BACKGROUND

Plaintiff, Adam Sprinkle ("Sprinkle"), was 29 years' old at the time of his administrative hearing. (R86) He is not married but lives with his girlfriend in a trailer. (R30) Sprinkle has the ability to drive, but was driven to the hearing by his mother after losing his driver's license following a DUI conviction. (R27, R30) He stated that he had not used alcohol or drugs since he went into custody. (R28) He has a high school diploma and can read and write in the English language, although he sometimes does not comprehend or remember everything he reads. (R33, R36) Sprinkle has worked as a fast food worker,

a janitor, a garbage collector, a machine operator, and a bookcase assembler. (R37-38)

Sprinkle claims that he is unable to work because he has asthma and mental deficiencies. On June 15, 2006, he applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability that began on October 1, 2000. (R86-88, R100). His application was denied both initially and on reconsideration. Sprinkle requested a hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ John Dodson on July 23, 2008, at which Sprinkle, who was represented by counsel, and vocational expert ("VE") Dennis Gustafson appeared and gave testimony. Shortly before the hearing, Sprinkle amended his date of onset to February 1, 2007. (R165) This amendment essentially rendered his DIB claim moot, as the date of onset was after his date last insured. Accordingly, the ALJ proceeded only with respect to the SSI claim. (R10)

At the time of the hearing, Sprinkle was not taking prescription medications for his conditions. (R32) He testified that although he had been prescribed an Albuterol inhaler for his asthma, he hadn't taken it for a long time because he didn't need it and really couldn't afford it. (R28) Sprinkle reported feeling depressed lately because his grandmother had passed away a week before the hearing; however, there is nothing in the record indicating that he was suffering from a more lasting condition or that he was diagnosed with any type of depressive disorder. (R32-33) He also testified that he took Tylenol for migraines "every once in a while" but not as often as he had in the past. (R35-36)

On a typical day, Sprinkle testified that he doesn't get up until about 9:00 or 10:00am. (R30) He fixes breakfast and watches a little TV before getting up to do his daily

chores of dishes and yard work.  Id.  He mows the yard, makes sure the yard is picked up, takes the garbage out, and mops the floor.  (R30-31) Sprinkle collects Hot Wheels cars and likes to watch wrestling on TV.  (R31)  He plays card games on occasion and likes to play video games but doesn't socialize much because of his desire to isolate himself away from substance abuse.  (R31-32, R34) He testified that he has no trouble taking care of himself and maintaining his own personal hygiene.  (R32) Sprinkle is able to prepare simple meals for himself and can also shop for groceries or clothing.  (R220) He is also capable of following the directions in notes left for him by his mother each day.  (R112, R129)

>	The ALJ posed a hypothetical question to the VE:

>> Q: I want you to assume a person the same age, education and work experience as claimant, who can perform the full range of medium work.  And assume further this person is limited to simple one and two-step tasks of a routine, repetitive nature.  Also assume this person could only have occasional contact with the public, co-workers, and supervisors.  And also he's to avoid extreme heat and cold and concentrated exposure to environmental irritants such as dust and fumes.  Would the claimant be able to perform his prior relevant work?

>> A: Based upon that hypothetical, Your Honor, the claimant could return to the past work of a janitor and the machine operator, machine tender.

>> * * *

>> Q:  [W]ould there be other jobs available in the local, regional or national economy?

>> A: You'd have DoT 920.587-018, which is a medium physical demand hand packager, 6,900 positions; DOT 920.687-018, which is a light physical demand hand packager, 13, 500; DOT 920.685-026, is a packaging machine tender, 10,200, and that's at light physical demand.  That would be representative, Your Honor.

(R40-42)

Sprinkle's attorney asked if the response would be any different if the VE assumed that the claimant could only occasionally understand even simple one or two-step instructions and operations in a work setting. (R41) The VE responded that this limitation would eliminate all work. Id. Sprinkle's attorney then inquired whether the limitation on avoiding temperature extreme and concentrated exposure to irritants would limit a person's occupational base, to which the VE answered that it would limit it somewhat. Id.

On November 4, 2008, the ALJ issued his decision. (R19) The ALJ found that Sprinkle has severe impairments of borderline intellectual functioning and asthma. (R12) The ALJ determined, however, that Sprinkle does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1. Id. After considering the medical evidence in the record and relevant credibility factors as a whole, the ALJ found that Sprinkle retained the residual functional capacity ("RFC") to perform medium work except that he is limited to simple one and two step tasks of a routine and repetitive in nature with only occasional interaction with co-workers, supervisors, or the public and which does not require concentrated exposure to fumes, dusts, or extreme heat. (R16) The ALJ concluded that Sprinkle's medically determinable impairments could reasonably be expected to produce the alleged symptoms. Id. However, his assertions regarding the intensity, persistence, and limiting effects of the symptoms were found to be not credible to the extent that they are inconsistent with the RFC assessment. Id.

Past relevant work was found to be precluded. (R17) Based on a consideration of his age, education, work experience, and residual functional capacity, the ALJ concluded that although Sprinkle's ability to perform work on the medium exertional levels has been

compromised by non-exertional limitations, the testimony of the VE established that he was capable of making a successful adjustment to work that exists in significant numbers in the national economy and that he was not under a disability as defined under the Social Security Act at any time since his alleged onset in February 2007. (R18)

Sprinkle submitted a Request for Review of Hearing Decision. (R5) On August 28, 2009, the Appeals Council declined review of his claim, and the ALJ's decision became the final decision of the Commissioner. (R1-4) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to SSI, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).

Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In his appeal, Sprinkle contends that the ALJ failed to weigh the opinion of a psychological consultative examiner according to law and that his resultant findings on the RFC and the Listings are not supported by substantial evidence. Specifically, he relies on the evaluation of Dr. Charles Farrar, who interviewed Sprinkle for 75 minutes and determined that he scored in the Borderline Retarded Range of Intelligence with a verbal IQ of 71, a performance IQ of 78, and a full-scale IQ of 72. (R187-88) Supplementary Indices were in the same general range with Verbal Comprehension at 80, Perceptual Organization at 80, Working Memory at 61, and Processing Speed at 73. (R187) Dr. Farrar noted that these scores could be an overestimation of Sprinkle's true ability based on his representation that he had completed a similar test at some time prior to that date and that a more accurate classification would be Mildly Retarded. (R187-88) He further found that Sprinkle had slow performance, would probably have difficulty getting along with supervisors and co-workers, few good verbal skills, difficulty in understanding even simple one or two step operations, poor short term memory, severely limited arithmetic skills, and deficient judgment. (R188)

The Seventh Circuit has recognized that a treating physician's opinion is not binding on the Commissioner. Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982). However, there is no presumption of bias against a treating physician's disability opinion. Edwards v. Sullivan, 985 F.2d 334, 337 (7th Cir. 1993). Rather, the ALJ, as the trier of fact, must consider the treating physician's possible bias. Id. The Commissioner will not give

controlling weight to the treating physician's opinion on the nature and severity of the claimant's impairments unless the treating physician's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); Moss v. Astrue, 555 F.3d 556, 560 (7th Cir. 2009).

> In short . . . it is up to the ALJ to decide which doctor to believe -- the treating physician who has experience and knowledge of the case, but may be biased, or that of the consulting physician, who may bring expertise and knowledge of similar cases -- subject only to the requirement that the ALJ's decision be supported by substantial evidence.

Micus v. Bowen, 979 F.2d 602, 609 (7th Cir. 1992).

It is also the province of the ALJ to resolve evidentiary conflicts. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 542 (7th Cir. 1992); Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). The existence of an evidentiary dispute is not grounds for reversing the ALJ's decision to credit one version of facts over another. Herr v. Sullivan, 912 F.2d 178, 181 n.4 (7th Cir. 1990) However, the ALJ must explain with particularity the basis of his decision. Young v. Secretary of Health and Human Services, 957 F.2d 386, 393 (7th Cir. 1992).

In addressing Sprinkle's mental limitations, the ALJ noted Sprinkle's scores from Dr. Farrar's consultative intelligence testing in August 2006, as well as his corresponding comment that these scores could be an overestimation based on Sprinkle's exposure to

prior testing; however, the record is devoid of evidence of any such prior testing. (R13) The ALJ noted that other than this evaluation, the only other evidence of treatment for any mental health condition was the time he spent receiving counseling services at Bridgeway following his DUI arrest in February 2006. Id. He began treatment for substance abuse and addiction in February 2007, which he successfully completed in July 2007. Id.

The ALJ rejected Sprinkle's argument that his mental impairments met or medically equaled the requirements of any applicable Listing. No evidence indicated that Sprinkle experienced any episodes of decompensation of extended duration. (R14) Considering the evidence regarding his activities of daily living, the ALJ found only mild restriction in activities of daily living and social functioning. Id. The record supported a conclusion of moderate limitation in concentration, persistence, or pace based on Sprinkle's history of substance abuse, borderline intellectual functioning, ability to read, watch TV, drive a car, and use a computer. Id. As the record did not support a finding of "marked" limitation in at least two areas plus repeated episodes of decompensation, Sprinkle could not satisfy the paragraph B criteria of Listing 12.02 or 12.09 or the paragraph D criteria of Listing 12.05. Id. Nor did Sprinkle meet the paragraph C criteria of Listing 12.02, requiring medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following:

> (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3)

> Current history of 1 or more years' inability to function outside
> a highly supportive living arrangement, with an indication of
> continued need for such an arrangement.

Id. The ALJ found evidence in the record indicating sufficient adaptability to maintain extensive daily activities and an ability to function outside his home, in conjunction with an absence of episodes of decompensation, dispositive of Sprinkle's inability to satisfy the paragraph C criteria.

Sprinkle also takes specific issue with the ALJ's findings that he did not satisfy the criteria in paragraph C for Listing 12.05. First, he argues, without citation to relevant authority, that his poor grades in special education classes are sufficient to satisfy the requirement that he exhibited adaptive deficits prior to age 22. The ALJ found that Sprinkle failed to satisfy this criteria because he did not have valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Placement in special education classes and a poor academic record in and of themselves are generally not enough to establish adaptive deficits in childhood.

The ALJ specifically gave less weight to the speculative opinions of Dr. Farrar based on Sprinkle's failure to disclose his substance abuse problem to the doctor, which could have provided an alternative reason for Sprinkle's slow performance during testing. (R15) Specifically, the ALJ stated:

> [T]he undersigned rejects the claimant's 12.05C argument
> since the doctor's opinions as to the claimant's functioning are
> not based on full knowledge of his substance abuse. Thus,
> even if he had demonstrated sufficient deficits in adaptive
> functioning prior to age 22, the undersigned finds the
> claimant's IQ scores to be lower than his actual intelligence
> level; his overall functioning to be better than what was

> presented in an isolated snapshot to the consultative examiner due to his overall lack of treatment; and, his overall good adaptive functioning and undisclosed substance abuse problem at that time.

Id.

The ALJ further cited support from the findings of the state agency medical and psychological consultants. Id. Dr. Phyllis Brister, a state agency psychologist, reviewed Sprinkle's record in September 2006. (R193) Dr. Brister found a medically determinable impairment that did not precisely satisfy the diagnostic criteria of Listing 12.02. (R194) Based on her review of the record, she completed a Psychiatric Review Technique which concluded that Sprinkle has mild restriction on activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (R203) Dr. Brister further opined that the evidence did not establish the presence of the paragraph C criteria. (R204)

Dr. Brister's Mental RFC for Sprinkle noted no significant limitation in his: (1) ability to remember locations and work-like procedures; (2) ability to understand and remember very short and simple instructions; (3) ability to carry out very short and simple instructions; (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) ability to sustain an ordinary routine without special supervision; (6) ability to make simple work-related decisions; (7) ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (8) ability to ask simple questions or assistance; (9) ability to accept

instructions and respond appropriately to criticism; (10) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (11) ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (12) ability to respond appropriately to changes in the work setting; (13) ability to be aware of normal hazards and take appropriate precautions; (14) ability to travel in unfamiliar places or use public transportation; and (15) ability to set realistic goals or make plans independently of others. (R207-08) Dr. Brister found moderate limitation in Sprinkle's: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to work in coordination with or proximity to others without being distracted by them; and (5) ability to interact appropriately with the general public. Id. As a result, Dr. Brister opined that Sprinkle would be limited to simple 1-2 step operations of a routine, repetitive nature, but could tolerate occasional social contacts and adapt to routine so as to be capable of simple substantially gainful employment. (R209)

In December 2006, Dr. Joseph Mehr reviewed the evidence in the file, as well as Dr. Brister's Psychiatric Review Technique and Mental RFC. (R233-34) Based on his reivew, Dr. Mehr determined that Sprinkle's participation in the substance abuse program did not provide a basis for changing the prior findings and affirmed Dr. Brister's conclusions as written. (R234)

A physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight so long as it is supported by medical findings and consistent with substantial evidence in the record. Elder v. Astrue, 529 F.3d 408, 415 (7th Cir. 2008), *citing* Skarbek v. Barnhart, 390 F.3d 500, 503 (7th Cir. 2004). The weight to be afforded to

the physician's opinion depends on consideration of several factors: (1) the length, nature, and extent of the physician and claimant's treatment relationship; (2) whether the physician supported his or her opinions with sufficient explanations and medical findings; (3) and whether the physician specializes in the medical conditions at issue; and (4) the degree of consistency between the opinion and other evidence in the record. Id.; 20 CFR § 404.1527(d). "If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulate[d]' his reasons – a very deferential standard that we have, in fact, deemed lax." Id., *quoting* Berger v. Astrue, 5165 F.3d 539, 545 (7th Cir. 2008).

Here, the ALJ concluded that while there is no doubt that Sprinkle has some mental limitations and may have difficulty executing more than simple, one or two-step instructions, the evidence does not support a finding that he is limited to the extent claimed or which would be necessary to satisfy the Listings. Dr. Farrar was a consulting psychologist who saw Sprinkle only once. The ALJ found Dr. Farrar's testing results and opinions to be generally credible and consistent with medical evidence of record, except to the extent that he was not fully informed with respect to Sprinkle's substance abuse and addictions in speculating about Sprinkle's actual abilities. In this respect, the opinions of the DDS consulting mental health professionals were more fully informed and consistent with the evidence of record. *See* Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004) (noting that state agency doctors are experts on determining medical equivalence and their opinions may be relied on by the ALJ.)

The Seventh Circuit has held that in addition to IQ scores, a determination of whether a claimant demonstrates deficits in adaptive functioning manifested prior to the age

of 22 requires consideration of other factors such as a claimant's life activities and employment history, which must then be weighed into the ALJ's decision. Adkins v. Barnhart, 226 Fed.Appx. 600, 605 (7th Cir. 2007). Other evidence reflected in the record bearing on this issue includes Sprinkle's own admissions regarding his activities of daily living as set forth above, the fact that he graduated from high school and completed a year of welding classes, the lack of any episodes of decompensation of extended duration, his ability to interact well with his mother and girlfriend, and lack of any ongoing treatment or medication regimen. Sprinkle's demonstrated ability to maintain his jobs as a janitor, garbage collector, and machine operator is also useful to determining his ability to function in a work setting. *See* Witt v. Barnhart, 446 F.Supp.2d 886, 895-96 (N.D.Ill. 2006), *citing* Williams v. Sullivan, 970 F.2d 1178, 1185 (3rd Cir. 1992).

Findings of fact by state agency medical professionals regarding the nature and severity of an individual's impairments were granted probative weight, and the ALJ gave an adequate rationale for these credibility determinations. It is Sprinkle's burden to demonstrate that he meets the criteria of any Listing, and it is not the job of the Court or the ALJ to fill in the gaps of record, particularly when the claimant is represented by counsel. The ALJ did not disregard evidence of Sprinkle's IQ scores in the Borderline Retarded Range. Rather, the ALJ properly reviewed the record for evidence regarding Sprinkle's ability to function in society. Nor, contrary to Sprinkle's suggestion, is it the ALJ's responsibility to develop the record by requesting a full psychological examination. Sprinkle has the burden of presenting evidence to prove his disability, and the ALJ's responsibility to develop the record is not so broad as to relieve the claimant of his duty to provide factual support for his claim. Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006); Griffin v.

Barnhart, 198 Fed.Appx.561, 2006 WL 3373522 (7th Cir. 2006). As there is substantial evidence in the record upon which the ALJ could base his finding at Step 3 that Sprinkle did not meet or medically equal a listing, and the ALJ rationally articulated the grounds for his decision, Sprinkle's appeal in this regard must be denied.

Sprinkle also argues that the ALJ erred in failing to properly address his substance abuse. He relies on Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003), for the proposition that in making a disability determination, the ALJ must evaluate which of the claimant's current physical and mental limitation would remain if the claimant stopped using drugs or alcohol and then assess what his remaining limitations would be. With all due respect, Sprinkle's reliance on Brueggemann is misplaced. Since 1996, Congress has precluded an award of benefits for any claimant whose addiction to drugs or alcohol is a "contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). This is reflected in Brueggemann, where the Eighth Circuit directs that a determination must be made as to whether a claimant's disability would remain even absent substance abuse. 348 F.3d at 693-94. Moreover, it is the claimant's responsibility to prove that substance abuse was not a contributing factor to any disability determination. Id.

Here, there was never any determination that Sprinkle was disabled, even without excluding whatever effects may have been lingering from his past drug and alcohol abuse, and Sprinkle testified that he had not used drugs or alcohol since his arrest. Absent a finding of disability, there is no requirement to assess the materiality of substance abuse or addiction, and Sprinkle's argument to the contrary is without merit.

Finally, Sprinkle maintains that the ALJ erred by playing doctor instead of developing an accurate record regarding his IQ and ability to work at a competitive pace. Specifically, he argues that where the evidence is not sufficient for an ALJ to make a proper assessment of disability, an ALJ must gather the evidence necessary to make such a determination and cannot make his own independent medical findings. Sprinkle challenges that the ALJ found that his IQ scores were lower than his actual intelligence without any medical support whatsoever. Sprinkle is incorrect.

The ALJ accepted the testing scores obtained by Dr. Farrar and used them as the basis for his opinion in conjunction with the opinions of the state agency psychologists, Dr. Brister and Dr. Mehr. This was the extent of the medical evidence of record, as the record was devoid of any evidence establishing that Sprinkle's IQ scores would actually be less than those obtained by Dr. Farrar in August 2006. Accordingly, the ALJ's findings were supported by the medical evidence of record. What was discounted was Dr. Farrar's speculation that these scores may be overestimated, as there was contrary evidence in the record, there was no evidence of other testing in the record, and Sprinkle had failed to advise Dr. Farrar of his prior substance abuse..

Sprinkle faults the ALJ for not ordering additional IQ testing following his completion of substance abuse treatment. However, Sprinkle testified that he stopped using drugs and alcohol when he was arrested in February 2006 and had not used them since. The logical inference to be drawn from this admission is that any IQ tests performed following his completion of treatment in July 2007 would likely result in higher rather than lower scores than those obtained in August 2006, which would weigh in favor of the ALJ's conclusions.

The ALJ ultimately concluded that Sprinkle was capable of performing a range of jobs that exist in significant numbers in the national economy based on his mental RFC. Sprinkle does not specifically challenge the vocational testimony. Substantial evidence supports the ALJ's mental RFC finding, and his hypothetical question including the same limitations was appropriate. "All that is required is that the hypothetical question be supported by the medical evidence in the record." Meredith v. Bowen, 833 F.2d 650, 654 (7th Cir. 1987); Cass v. Shalala, 8 F.3d 552, 555-56 (7th Cir. 1993).

This is not a case where medical records were insufficient or incomplete, which could necessitate further development of the record. Rather, the medical records simply failed to compel the conclusion that Sprinkle was disabled within the meaning of the Act at the time relevant to this application. Accordingly, the Court must conclude that the ALJ's determination was supported by substantial evidence.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment [#12] is DENIED, and the Commissioner's Motion to Affirm [#15] is GRANTED. This matter is now terminated.

ENTERED this 28th day of February, 2011.

                                                s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge